UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**    :

  v.                                  Case No. 2:23-cr-181
                                      Judge Sarah D. Morrison

**SHEDRICK HAWKINS,**
                                   :
        **Defendant.**

## OPINION AND ORDER

Defendant Shedrick Hawkins moves to suppress evidence seized as a result of a search warrant executed at his apartment at 314 Highview Landing, Columbus, Ohio 43207, alleging that the affidavit in support of the warrant did not demonstrate probable cause to search. (ECF No. 57.) He also requests a *Franks* hearing. The Government opposes both the Motion and the hearing request. (ECF No. 60.)

**I.    BACKGROUND**

The facts provided herein are drawn from Detective Christina Goble's affidavit, which supported the search warrant in question. (ECF No. 57-1.)

In April 2023, the Franklin County Sheriff's Office Special Investigations Unit received a complaint that James Crockett was selling drugs outside a home located on the 1000 block of North 9th Street, Columbus, Ohio. (*Id.*, PAGEID # 151.) The complainant included a Facebook name and profile for Mr. Crockett that Detective Goble used to contact him via Facebook Messenger. (*Id.*) Throughout

1

April and May 2023, Detective Goble arranged multiple controlled drug buys from Mr. Crockett. (*Id.*) One particular buy from Mr. Crockett led to the investigation of Mr. Hawkins.

### A. The May 9 Controlled Buy

On May 9, 2023, an undercover detective ("UC") arranged to buy one ounce of cocaine from Mr. Crockett. (*Id.*) When the UC arrived at the meeting spot, Mr. Crockett asked the UC to drive him to pick up the drugs. (*Id.*) At the same time, Mr. Crockett contacted someone at telephone number 614-808-5022 ("PN5022"), from whom he had planned to purchase cocaine to sell to the UC. (*Id.*) The user of PN5022 gave Mr. Crockett a new meeting location. (*Id.*)

A maroon Nissan Maxima was waiting at the designated location when Mr. Crockett and the UC arrived. (*Id.*, PAGEID # 152.) Shortly after receiving a call from PN5022, Mr. Crockett got out of the UC's vehicle and got into the Maxima. (*Id.*) Five minutes later, Mr. Crockett got out of the Maxima holding a bag of white powdery substance. (*Id.*) When Mr. Crockett got back in the UC's vehicle, he gave the bag to the UC in exchange for $700. (*Id.*) The UC then drove Mr. Crockett to North 9th Street while other law enforcement officers watched the Maxima drive to an apartment complex at 327 Highview Landing. (*Id.*) A field drug test determined that the "white powdery substance" in the bag that Mr. Crockett sold to the UC was positive for cocaine. (*Id.*)

Over the next several weeks law enforcement officers surveilled 327 Highview Landing.

### B. Detective Goble's investigation of the Maxima

For her investigation of the driver of the Maxima, Detective Goble began by conducting a title search on the vehicle, which revealed that Spectrum Motor 1, LLC was the registered owner. (*Id.*) She then obtained a warrant to place a GPS tracker on the car; when she went to place the GPS tracker, the Maxima was parked at 314 Highview Landing. (*Id.*)

The data from the GPS tracker showed that the Maxima had been left at Spectrum Motor 1 car dealership in Westerville, Ohio. (*Id.*) Because there was no other activity on the Maxima, Detective Goble went to 314 Highview Landing where she found a Dodge Charger in the same spot where the Maxima had been parked. (*Id.*) Investigation revealed that the Charger was registered to both Spectrum Motor and Mr. Hawkins and that Mr. Hawkins resided at 314 Highview Landing. (*Id.*)

### C. Detective Goble monitors Mr. Hawkins activities to and from his apartment.

On May 26, 2023, Detective Goble executed a search warrant for Mr. Crockett's cellphone and found Facebook messages between he and Mr. Hawkins in which the two shared videos of marijuana and discussed narcotics prices and meeting locations. (*Id.*, PAGEID # 154.) Mr. Hawkins had posted a photo of himself in front of a Dodge Durango; the Durango looked similar to a vehicle that Detective Goble had seen in the same parking spot as the Maxima and Charger at 314 Highview Landing. (*Id.* PAGEID # 153-54.)

The same day, Detective Goble watched Mr. Hawkins leave his apartment, at the same time, PN5022 transmitted location signals consistent with Mr. Hawkins's

3

movement; Detective Goble had activated a cellphone ping warrant[1] for PN5022 because it was in the same area as the Maxima during the May 9 controlled drug buy. (*Id.*, PAGEID #152-53.)

Then, on June 5, 2023, Detective Goble observed a Chevrolet Malibu parked in the same parking spot as the Maxima, Charger, and Durango at 314 Highview Landing; the Malibu was also registered to Spectrum Motor and Mr. Hawkins. (*Id.*, PAGEID # 154.) That day, Detective Goble saw Mr. Hawkins leave his apartment carrying a pink trash bag and a white bag with red lettering. (*Id.*) He threw both bags into the dumpster outside his apartment before leaving in the Malibu. (*Id.*) At the time, PN5022 was transmitting a location signal near Mr. Hawkins's apartment. (*Id.*) While Detective Goble watched, another detective retrieved the discarded bags; the detective noted that there were no other pink bags or white bags with red lettering in the dumpster. (*Id.*) Police found a "clear plastic bag containing a white powdery residue" inside one of the bags, and a field drug test determined that the substance was positive for cocaine, a fentanyl compound, or methamphetamine. (*Id.*)

The next day, Detective Goble saw Mr. Hawkins get into a Ford Explorer, so she followed him as he drove to a house on Taylor Avenue. (*Id.*) When Mr. Hawkins arrived, a man approached the Explorer for about two minutes before walking away with a brown bag. (*Id.*) Mr. Hawkins then returned to 314 Highview Landing.

---

[1] A cellphone ping refers to the technique used by a phone company to initiate the phone location signal without alerting the user.

PN5022 transmitted location signals in the areas consistent with Mr. Hawkins's driving from 314 Highview Landing to Taylor Avenue and back. (*Id.*)

### D. Search Warrant for 314 Highview Landing

Based on this information, Judge Cynthia L. Ebner of the Franklin County, Ohio Municipal Court granted Detective Goble's search warrant application for 314 Highview Landing. After execution of the search warrant, law enforcement seized four firearms; 1,197 grams of fentanyl; 1,806 grams of cocaine; $17,775 in cash; drug paraphernalia; and additional firearm magazines, and boxes of ammunition. (ECF No. 1; ECF No. 22.)

### E. Mr. Hawkins's Indictment

On September 7, 2023, a federal grand jury returned an Indictment charging Defendant with one count of possession with intent to distribute fentanyl and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi), and (b)(1)(B)(ii), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 22.)

## II. ANALYSIS

Mr. Hawkins has three arguments as to why the evidence seized from 314 Highview Landing should be suppressed. First, he contends that Detective Goble's affidavit contains a misleading statement or material omission crucial to a probable cause finding, and he is entitled to a *Franks* hearing on this issue. (ECF No. 57, PAGEID # 142.) Second, even if Detective Goble's material omission were removed, her affidavit lacks probable cause because it fails to establish a "credible nexus"

5

between 314 Highview Landing and drug trafficking activity. (*Id.*, PAGEID # 142-43.) Finally, Mr. Hawkins argues that the good-faith exception under the exclusionary rule does not apply.

> ### A. Mr. Hawkins has not shown that Detective Goble's affidavit contains any misleading statements or material omissions.

An affidavit in support of a search warrant is presumed valid. *United States v. Fountain*, 643 F. App'x 543, 545 (6th Cir. 2016). A defendant is entitled to an evidentiary *Franks* hearing on the veracity of a warrant affidavit only if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission was necessary to the probable cause finding in the affidavit. *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). Simply proving a falsity or material omission is not enough—a defendant must show that the affiant intended it to be false or misleading. *United States v. Merrell*, 330 F. App'x 556, 560 (6th Cir. 2009) (district court correctly denied a *Franks* hearing request when the defendant "made no showing that the affiant intended to mislead the judge by th[e] omission"); *United States v. Harris*, No. 1:21-CR-74-6, 2023 WL 3475406, at *4 (S.D. Ohio May 15, 2023) (Hopkins, J.) (citing *Merrell*). Allegations of a material omission are held to a higher standard than false statements because of the potential for "endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *United States v. Fowler*,

6

535 F.3d 408, 415–16 (6th Cir. 2008) (quotation omitted). Whether to hold a *Franks* hearing is within the sound discretion of the district court. *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019).

Mr. Hawkins does not argue that any of the statements in Detective Goble's affidavit are false. Rather, he contends that Detective Goble omitted that the "white powdery substance" from the May 9 controlled buy weighed only 11.2 grams—not one ounce as Mr. Crockett and the UC had planned. Mr. Hawkins argues that Detective Goble's statement about the amount of cocaine purchased by the UC was misleading. (ECF No. 57, PAGEID # 142.)

But Mr. Hawkins makes no preliminary showing that Detective Goble's statements were misleading. Her affidavit states that the UC planned to buy one ounce of cocaine from Mr. Crockett, who then contacted PN5022 about purchasing one ounce of cocaine. When Mr. Crockett and the UC arrived at the designated meeting location, Mr. Crockett got into the Maxima and came out with a bag of "white powdery substance" that he then gave to the UC. Detective Goble did not specify how much the bag weighed, only that the substance in the bag tested positive for cocaine.

Even if the Court were to find that Detective Goble's affidavit contained a material omission as to the amount of cocaine involved in the May 9 controlled buy, Mr. Hawkins does not provide any evidence that Detective Goble knowingly, intentionally, or recklessly omitted such information in her affidavit.

7

More importantly, Detective Goble's omission is not material to the question of probable cause. The sale of any amount of cocaine is a felony under Ohio law, so the sale of even less than 10 grams of cocaine would have been sufficient to establish probable cause for the search warrant. Thus, Mr. Hawkins is not entitled to a *Franks* hearing on this issue.

### B. The search warrant established a sufficient nexus between 314 Highview Landing and the evidence of a crime.

To establish probable cause for issuance of a search warrant, a supporting affidavit must demonstrate a likelihood of two things: first, that the items sought are "seizable by virtue of being connected with criminal activity"; and second, "that the items will be found in the place to be searched." *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 n.6 (1978)). In other words, there must be a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). The nexus between criminal activity and the item to be seized is automatic when the search is for contraband, so a police request to search for illegal drugs must satisfy only the second showing for a valid warrant. *Church*, 823 F.3d at 355 (internal quotation marks omitted). In such a case, the affidavit must establish a "fair probability that contraband or evidence of a crime will be found in a particular place," which depends on the "totality of the circumstances." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 236).

The determination of whether an affidavit established probable cause requires a "flexible, all-things-considered approach"—"turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Florida* v. *Harris*, 568 U.S. 237, 244 (citation omitted). Courts ask whether the issuing judge had a substantial basis for finding that the affidavit established probable cause and gives the issuing judge's determination of probable cause "great deference" unless she arbitrarily exercised her authority. *Church*, 823 F.3d at 354 (citing *United States v. Brown,* 732 F.3d 569, 573 (6th Cir.2013)).

Mr. Hawkins argues that there is insufficient nexus between his apartment and drug trafficking activity. First, he relies on *Abernathy*, claiming that the trash-pull from outside his apartment is insufficient to establish a nexus. *United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016). Second, he contends that the non-trash-pull evidence does not directly connect 314 Highview Landing to drug trafficking activities. (ECF No. 57, PAGEID #143.)

With regard to his first argument, *Abernathy* provides no assistance here. There, the defective's affidavit stated that the police received information about illegal drug activity at a particular home. *Abernathy*, 843 F.3d at 247-48. Law enforcement officers then conducted a trash-pull and found several marijuana roaches, marijuana residue inside, and multiple plastic bags consistent with those used to package marijuana for resale. *Id.* The Sixth Circuit held that a small quantity of marijuana paraphernalia found in the defendant's trash-pull was

9

insufficient, *standing alone,* to create probable cause to search the defendant's residence. *Id.* at 256-57 (Emphasis added). Because the detectives had later arrived on the scene and searched the trashcans, the Court explained that there was no way of knowing if the trash-pull evidence came from the defendant's residence recently or at all. *Id.* at 254-55 ("Without corroboration, we cannot say that this supports a conclusion of the probable presence of contraband on the day of the search.")

Here, Detective Goble saw Mr. Hawkins leave 314 Highview Landing while carrying two distinct trash bags – a pink trash bag and a white one with red lettering. She saw Mr. Hawkins take both bags to the dumpster behind his apartment and throw them in, which a detective immediately retrieved. Unlike the affidavit in *Abernathy*, Detective Goble knew the trash-pull came from Mr. Hawkins. And, also unlike *Abernathy*, Detective Goble's affidavit detailed additional facts beyond the trash-pull evidence to support probable cause.

As to Mr. Hawkins's argument regarding the non-trash-pull evidence, Detective Goble's affidavit established a "fair probability" that cocaine would be found in 314 Highview Landing. Specifically, her affidavit described that (i) Mr. Crockett had contacted the user of PN5022 to buy drugs to sell to the UC; (ii) PN5022 had multiple cellphone pings at 314 Highview Landing during the May 9 controlled buy and for several weeks after; (iii) Mr. Crockett got cocaine from the driver of the Maxima; (iv) the Maxima drove to the apartment complex at 327 Highview Landing after the May 9 controlled buy and was found parked at 314 Highview Landing a couple of days later; (v) multiple cars, including the Maxima,

10

switched in and out of the same parking spot at 314 Highview Landing within few days, consistent with someone involved in drug activities; (vi) Mr. Hawkins was the registered owner of at least three of those four cars; (vii) Facebook communications between Mr. Hawkins and Mr. Crockett discussed narcotics prices and meeting locations and shared pictures of marijuana; (viii) Mr. Hawkins left 314 Highview Landing to engage in suspected drug activity—he drove to another house, handed a brown bag to a man, and then went back to his apartment; and (ix) cellphone pings for PN5022 were consistent with Mr. Hawkins's movement and suspected drug sales. Thus, the totality of the circumstances established a strong nexus between illegal drugs and Mr. Hawkins's apartment.

### C. The Good-faith Exception

The Court finds that Detective Goble's affidavit provided sufficient nexus for finding probable cause to search Mr. Hawkins's apartment, so there is no need to apply the good-faith exception.

## III. CONCLUSION

The Court **DENIES** Mr. Hawkins's Motion for a *Franks* Hearing and to Suppress Evidence. (ECF No. 57.)

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**